## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Joe H. Bandy-Bey,                                   Civil No. 06-2109 (JRT/SRN)

        **Plaintiff,**

      **v.**                                   **REPORT AND RECOMMENDATION**

David R. Crist, Joan Fabian,
Mr. Hokonson, Ken Thole, Jerome
G. Sauer, John Wing, Sean Swanson,
and Matthew VanderVegt,

        **Defendants.**

_____

    Joe H. Bandy-Bey, pro se, Minnesota Correctional Facility, 1000 Lake Shore Drive, Moose Lake, Minnesota 55767

    Mark B. Levinger, Minnesota Attorney General's Office, 445 Minnesota Street, Suite 1100, St. Paul, Minnesota 55101, for Defendants

_____

SUSAN RICHARD NELSON, United States Magistrate Judge

    This matter comes before the undersigned United States Magistrate Judge on Defendants' Motion for Summary Judgment (Doc. No. 31). This case has been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. For the reasons set forth below, the Court recommends that the motion be granted and the case be dismissed with prejudice.

## I.    BACKGROUND

    In 2006, Plaintiff was incarcerated at the Minnesota Correctional Facility in Lino Lakes, Minnesota ("MCF-LL"). (Thole Aff. ¶ 2.) As a resident of living unit South D at MCF-LL, Plaintiff was permitted access to the prison library on Tuesdays or Thursdays from 1:35 p.m. to 2:15 p.m. (Id. ¶¶ 2, 3.) On April 3, 2006, Plaintiff asked Defendant Ken Thole, a lieutenant at

MCF-LL, for additional library time, and Defendant Thole permitted Plaintiff to sign up for both

Tuesday and Thursday.  (Id. ¶ 3.)  All prisoners are required to sign up in advance for library

time.  (Id. ¶ 10.) Plaintiff subsequently asked for even more library time, but Defendant Thole

denied the request because of security concerns[1] and the limited number of computers in the

library.  (Id. ¶¶ 4, 5.)  Defendant Thole's practice was to authorize additional library access for

inmates only if they were working on an active case and demonstrated a need for additional time.

(Id. ¶ 6.)

On April 27, 2006, correctional officer Timothy Dunn and Plaintiff discussed Plaintiff's

library use, and Dunn subsequently summarized the conversation in a memorandum to

Defendant Thole.  (Id. ¶ 10; Ex. 3.)  According to Dunn, Plaintiff asked him to use the library

even though Plaintiff had not signed up in advance.  (Id. ¶ 10; Ex. 3.)  Plaintiff said that

Defendant Thole had authorized him to use the library despite his failure to sign up, which was

not true.  (Id. ¶ 10; Ex. 3.)  Plaintiff showed Dunn a document from Defendant Thole that

authorized him to use the library on both Tuesdays and Thursdays, and Dunn asked another

prison official, Sergeant Dahl, how long the authorization was valid.  (Id. Ex. 3.)  Sergeant Dahl

replied that the authorization was for one week.  (Id.)  Plaintiff then said that a librarian had

given him written approval to use the library twice a week for a thirty-day period, but he could

not produce the document.  (Id. ¶ 10; Ex. 3.)  Plaintiff wrote an Offender Kite Form ("Kite")

regarding this incident.  (Pl. Aff. Ex. 7.)  According to Plaintiff, Dunn treated him poorly, wrote

misinformation on an earlier Kite, and refused to return the Kite to Plaintiff.  (Id.)

---

[1] MCF-LL operates on "controlled movement," which means that inmates in a residential
unit travel together.  This procedure permits the institution to house inmates who might
otherwise be a danger to each other.  (Id. ¶¶ 4, 5.)

2

Plaintiff wrote another Kite on April 30, 2006, stating that Defendant Thole denied him additional library time, insisted he write documents by hand, and forced him to send his legal mail to a non-legal address.  (Thole Aff. Ex. 4.)  Defendant Thole met with Plaintiff on May 2, 2006, to discuss this Kite.  (Id. Ex. 5.)  Plaintiff said that he did not want to talk with Defendant Thole and "that he couldn't wait to get [Defendant Thole's] answer in writing, and then he could take care of [Defendant Thole] and this matter."  (Id.)

Defendant Matthew VanderVegt wrote an Incident Report on May 2, 2006, regarding an interaction with Plaintiff during which Plaintiff accused Defendant Thole of threatening him and Defendant Matthew VanderVegt of "setting him up" by sending him to Defendant Thole's office earlier that day.  (Id. Ex. 6.)  Defendant VanderVegt instructed Plaintiff not to complain about prison staff in conversations with other staff and reminded Plaintiff that if he had a disagreement with a staff person, he should follow the appropriate written grievance procedures.  (Id.)  Due to Plaintiff's improper comments, Defendants Thole and VanderVegt placed Plaintiff on Investigative Restriction status.  (Id. Exs. 5, 6.)  Later that day, Defendants Thole and Hokonson spoke with Plaintiff about his conversation with Defendant VanderVegt and the accusations he had made against Defendant Thole on the April 30, 2006 Kite.  (Id. Ex. 7.)

Following this meeting, Plaintiff was charged with "Lying and Misrepresentation" for the statements he made on the April 30, 2006 Kite.  (Sauer Aff. ¶ 3; Ex. 1.)  During a hearing on the matter, Plaintiff admitted that Defendant Thole had not forced him to send his legal mail to a non-legal address.  (Id. Ex. 2.)  The hearing officer, Defendant Jerome Sauer, also found that Plaintiff had no basis to accuse Defendant Thole of intentionally causing him severe stress, forcing him to write documents by hand, interfering with his access to the courts, or making

misrepresentations to Plaintiff.  (Id.)  Consequently, Defendant Sauer found Plaintiff guilty of the violation and sentenced him to ten days in segregation.  (Id. ¶ 4; Ex. 2.)

Plaintiff was involved in another incident on May 4, 2006, when he asked Defendant Sean Swanson to use the library even though Plaintiff was not on the sign-up list.  (Thole Aff. Ex. 9.)  When Defendant Swanson told Plaintiff he had not signed up, Plaintiff said he wanted to speak to Defendant Thole.  (Sauer Aff. Ex. 5.)  Defendant Swanson therefore called Defendant Thole, who agreed to see Plaintiff, and Defendant Swanson gave Plaintiff a direct order to go to Defendant Thole's office.  (Id.)  Plaintiff said, "no, no, no," and walked away.  (Id.)  Plaintiff was charged with and convicted of disobeying a direct order and sentenced to fifteen days in segregation.  (Id. Exs. 5, 6.)

Based on these events, Plaintiff commenced this action pursuant to 42 U.S.C. § 1983. Although the Amended Complaint enumerates seven counts,[2] Plaintiff brings essentially two claims: (1) that prison officials denied him access to the courts by refusing him additional time in the law library, and (2) that prison officials retaliated against him by imposing disciplinary measures.[3]  In his response to Defendants' Motion for Summary Judgment, Plaintiff raises a third

---

[2] Plaintiff's self-described causes of action are (1) conspiracy to deprive Plaintiff of his First Amendment rights by communicating ex parte with a prior institution and impacting library time; (2) Defendant Hokonson's failure to intervene in retaliation against Plaintiff; (3) Defendants Wing and Sauer's deliberate indifference to Plaintiff's rights; (4) Defendants Wing and Sauer's conspiracy with Defendants Hokonson and Thole to obstruct justice by making misrepresentations on incident reports; (5) Defendants Swanson and VanderVegt's deliberate indifference to and hindrance of Plaintiff's rights and retaliation against Plaintiff by placing him in segregation; (6) Defendant VanderVegt's destruction of Plaintiff's typewriter so that Plaintiff could not write legible documents; and (7) Defendant Crist's indifference to Plaintiff's rights.  (Doc. No. 13; Am. Compl. ¶¶ 66-72.)

[3] Plaintiff's claim regarding his broken typewriter was apparently resolved in a settlement between the parties.  (Pl. Mem. Ex. 17.)  Neither party provided evidence related to the incident

4

claim—that his placement in segregation violated his substantive due process rights.

## II.     STANDARD OF REVIEW

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  A non-moving party cannot rely on the "mere existence of some alleged factual dispute between the parties [to] defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphases in original). "[R]egardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," then Rule 56 requires the entry of summary judgment in favor of the moving party. Id. at 322-23; accord Reed v. Woodruff County, 7 F.3d 808, 810 (8th Cir. 1993).  All evidence will be viewed in the light most favorable to the nonmoving party. E.g., Vette Co. v. Aetna Cas. & Surety Co., 612 F.2d 1076, 1077 (8th Cir. 1980).

---

or briefed the issue.

**III.    DISCUSSION**

Plaintiff is claiming that Defendants violated 42 U.S.C. § 1983, which prohibits a person acting under color of state law from depriving another person of his or her "rights, privileges, or immunities secured by the Constitution and laws." Section 1983 itself is not "a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979). The federal rights at issue here are the right to meaningful access to the courts, the right to be free from retaliation in exercising a constitutional right, and the right to substantive due process.

**A.    Access to the Courts**

Plaintiff contends that he was denied access to the courts when Defendants restricted his time in the law library, which caused him to miss a deadline to file a motion for reconsideration with the Minnesota Supreme Court. Defendants seek summary judgment on this claim on the grounds that Plaintiff has not shown either actual injury or causation.

Meaningful access to the courts is a fundamental constitutional right. Bounds v. Smith, 430 U.S. 817, 828 (1977). To prevail on this claim, Plaintiff must show that Defendants impeded a nonfrivolous legal claim and that he suffered an actual injury. Moore v. Plaster, 266 F.3d 928, 931 (8th Cir. 2001) (citing Johnson v. Missouri, 142 F.3d 1087, 1089 (8th Cir. 1998); Klinger v. Dep't of Corr., 107 F.3d 609, 617 (8th Cir. 1997)). Contrary to Plaintiff's belief, however, there is "no freestanding constitutional right to a particular number of hours in the prison law library." Entzi v. Redmann, 485 F.3d 998, 1005 (8th Cir. 2007) (citing Lewis v. Casey, 518 U.S. 343, 351 (1996); Walker v. Mintzes, 771 F.2d 920, 932 (6th Cir. 1985)).

6

Plaintiff has not shown either that his claims before the Minnesota Supreme Court were nonfrivolous or that Defendants' actions caused him injury.  Regarding nonfrivolousness, the legal claims at stake were whether the Minnesota Supreme Court would reconsider its denial of Plaintiff's petition for a writ of mandamus or whether it would transfer the petition to the court of appeals.  The Minnesota Supreme Court's initial denials of the petition and request for transfer indicate that Plaintiff's requests for reconsideration were frivolous.  Moreover, Plaintiff has failed to tell the Court what the grounds for reconsideration were and why the grounds were not frivolous.  It is Plaintiff's burden to show that his claims were not frivolous.  See Moore, 266 F.3d at 933.

With respect to causation, the Minnesota Supreme Court issued two orders adverse to Plaintiff: one on March 31, 2006, and one on April 13, 2006.  (Pl. Ex. 11.)  Plaintiff had ten days to seek reconsideration of each order.  (Id.)  Thus, the aggregate window of time for Plaintiff to file any motion for reconsideration was March 31, 2006 to April 23, 2006.  When Plaintiff asked for more access to the library during this period of time, on April 3, 2006, Defendant Thole granted his request.  There is no documented instance of Plaintiff being denied access to the library until April 27, 2006, well after the deadline by which Plaintiff had to seek reconsideration.  Furthermore, Plaintiff has not shown why he could not have handwritten the request for reconsideration, thus ensuring it would be timely filed.

In conclusion, Plaintiff has not shown that Defendants impeded a nonfrivolous legal claim or that Defendants' actions caused him injury.  Consequently, Defendants should be granted summary judgment on Plaintiff's claims that Defendants denied him meaningful access to the courts.

7

**B.      Retaliation**

Plaintiff next asserts that Defendants retaliated against him for exercising his First

Amendment right to file grievances.  Defendants respond that Plaintiff has no evidence of

retaliation and that significant evidence supports both instances of discipline.

An inmate may bring a claim for retaliatory discipline if a prison official files a

disciplinary charge in retaliation for the prisoner's exercise of his constitutional rights.  Sprouse

v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989).  The retaliation claim fails, however, if the

prisoner actually violated a prison rule.  Henderson v. Baird, 29 F.3d 464, 469 (8th Cir. 1994).

To prevail on summary judgment, Defendants need only provide "some evidence" that Plaintiff

violated a rule.  See Moore, 266 F.3d at 931 (citing Goff v. Burton, 7 F.3d 734, 738 (8th Cir.

1993); Superintendent v. Hill, 472 U.S. 445, 455 (1985)).

Defendant Sauer found Plaintiff guilty of lying and misrepresentation, which is a

violation of MCF-LL Rule #240.  Defendant Sauer considered incident reports, Plaintiff's Kites,

and Plaintiff's own testimony.  These documents and testimony contain evidence that Plaintiff

lied about his access to the library and his interactions with Defendant Thole.  Indeed, in his

hearing testimony, Plaintiff retracted his statement that Defendant Thole forced him to send legal

documents to non-legal addresses.  Defendant Sauer also found Plaintiff guilty of disobeying a

direct order, which is a violation of MCF-LL Rule #160.  In making this determination,

Defendant Sauer considered the relevant incident reports, Kites, and Plaintiff's testimony, which

contain evidence that Plaintiff failed to obey Defendant Swanson's direct order to report to

Defendant Thole.  The Court concludes that Defendants have presented sufficient evidence that

Plaintiff violated MCF-LL Rule #240 and Rule #160.

Furthermore, Plaintiff has no evidence, other than his unsupported allegations, that the discipline imposed by Defendants was in retaliation for exercising his First Amendment rights. Prison officials are presumed to be impartial decisionmakers, and an inmate's subjective beliefs that the officials acted vindictively are insufficient to survive summary judgment. de Llano v. Berglund, 282 F.3d 1031, 1035-36 (8th Cir. 2002) (quoting Marler v. Mo. State Bd. of Optometry, 102 F.3d 1453, 1457 (8th Cir. 1996)).

Accordingly, Defendants should be granted summary judgment on Plaintiff's retaliation claims because the record contains some evidence that Plaintiff actually violated the prison rules for which he was disciplined, and Plaintiff has no evidence of impartiality or bias by Defendants.

### C.      Substantive Due Process

Lastly, Plaintiff contends in his response to Defendants' summary judgment motion that Defendants violated his right to substantive due process by falsifying disciplinary charges and sentencing him to segregation. Although Plaintiff did not plead this particular claim in his Amended Complaint, the Court will address it, as the claim may be quickly resolved.

Plaintiff can establish a substantive due process violation in one of two ways: (1) by showing that the actions of the prison officials were "outrageous" or "truly irrational," see Anderson v. Douglas County, 4 F.3d 574, 577 (8th Cir. 1993); or (2) by showing an infringement of a fundamental liberty interest, see Weiler v. Purkett, 137 F.3d 1047, 1051 (8th Cir. 1998) (citation omitted). With respect to the first alternative, Plaintiff has not demonstrated that Defendants acted outrageously or irrationally. Other than Plaintiff's unsupported allegations, there is no basis to conclude that any of the Defendants falsified disciplinary charges. Rather, the sentences of segregation were rational and appropriate in the context of the infractions. See

Brown v. Nix, 33 F.3d 951, 954 (8th Cir. 1994).

As to the second alternative, Plaintiff has not shown an infringement of a fundamental liberty interest. Indeed, Plaintiff has no liberty interest in avoiding a twenty-five day period of segregation because such confinement is not an atypical and significant deprivation in relation to the ordinary incidents of prison life. See Sandin v. Conner, 515 U.S. 472, 485 (1995) (finding that thirty days in disciplinary segregation did not unconstitutionally burden prisoner's liberty interest); see also Brown, 33 F.3d at 954 (rejecting inmate's implication that he has a substantive due process right to be housed in the prison's general population).

Plaintiff has failed to show that Defendants violated his right to substantive due process, and Defendants should be granted summary judgment on this claim.


Based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendants' Motion for Summary Judgment (Doc. No. 31) be **GRANTED**, and this case be **DISMISSED WITH PREJUDICE**.


Dated: November 29, 2007

s/ Susan Richard Nelson
SUSAN RICHARD NELSON
United States Magistrate Judge


Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **December 14, 2007**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within ten days after service thereof. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.